IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY and EMPLOYER'S MUTUAL CASUALTY COMPANY, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL ACTION NO. 04-JEO-1228-NE ) |
| B & K REALTY, INC., d/b/a B & K GROCERY, and CASSIE HARGRAVE, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This case is a declaratory judgment action in which the plaintiff insurance companies seek to have the court determine the rights and obligations of the parties in an underlying lawsuit. The case is presently before the court on two motions for summary judgment. The first motion (doc. 21) was filed by plaintiff West American Insurance Company (hereinafter "West American") and the second motion (doc. 24) was filed by plaintiff Employer's Mutual Casualty Company (hereinafter "EMCC"). Neither defendant responded to either plaintiff's motion.[1]

---

[1] In a letter dated February 15, 2005, counsel for defendant Cassie Hargrave represented to the court that:

> We represent the defendant, Cassie Hargrave, in the above entitled declaratory judgment action. Ms. Hargrave is the plaintiff in the underlying lawsuit . . . in the Circuit Court of Limestone County . . . Ms. Hargrave was named in the current action only because she is the plaintiff in an underlying action against West American's insured, Defendant B&K Grocery.
>
> The plaintiffs seek an order from this Court indicating that Defendant Cassie Hargrave's claims in her underlying lawsuit against West American's insured, B&K Grocery, are excluded from coverage by West American as a result of the pollution exclusion included in its policy with Defendant B&K Grocery.
>
> The plaintiffs have filed a motion for summary judgment in this matter. . . . We understand that the Plaintiff's insured, B&K Grocery, is not planning to file a responsive submission and is not contesting summary judgment. As such, the Defendant,

However, the court is cognizant that it "cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Florida*, 363 F.3d 1099 (11th Cir. 2004). For the reasons set out herein, the court finds that the plaintiffs' motions are due to be granted.

## FACTS[2]

In 1995, the defendant B&K Realty, Inc. (hereinafter "B&K"),[3] acquired a parcel of real estate with an existing convenience store equipped with gasoline pumps and underground storage tanks. (Murphy Statement at pp. 9-10, 19-23, 34-36).[4] Since that time, it has operated a convenience store at that location.

In 1999, West American issued two successive liability insurance policies to Bowman Murphy and Kent Murphy d/b/a B&K Grocery. B&K made all premium payments on the two policies. (Murphy Statement at p. 79). The combined policy period for the two policies was from August 1, 1999, to August 1, 2001. (Matheny Aff. at Exs. 1 & 2).[5] Beginning August 1, 2001, EMCC issued Businessowner's Policy Number 2W5-69-88 to Bowman Murphy and Kent

---

third-party claimant Cassie Hargrave, will also not file a responsive submission.

[2]The facts set out below are taken almost verbatim from the plaintiffs' submissions. The facts as set out are unopposed in the record. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[3]Kent Murphy is the president of B&K Realty. His name is used interchangeably with "B&K" throughout this memorandum opinion.

[4]Murphy's sworn statement is located at document 21, exhibit 6 and at document 24, exhibit C in this court's record of the case.

[5]Matheny's affidavit is located at document 21, exhibit A in this court's record of the case.

Murphy d/b/a B&K Grocery. EMCC canceled B&K's policy for non-payment of premium on December 26, 2002. (Boland Aff. at ¶¶ 2-3).[6]

In 2004, the defendant, Cassie Hargrave (hereinafter "Hargrave") filed a lawsuit ("the underlying lawsuit") in the Circuit Court of Limestone County naming several defendants, including B&K Grocery, and asserting various theories of liability predicated on the allegation that gasoline leaked from B&K's tanks and/or lines and entered the groundwater and migrated to Hargrave's nearby property. Hargrave further alleged that B&K had actual and/or constructive knowledge of the contamination but failed to disclose it to her and that as a result of the pollution and contamination, her property was damaged and she suffered bodily injury.[7]

Both West American and EMCC were unaware of the groundwater contamination until the underlying suit was filed in March 2004. (Matheny Aff.; Murphy Statement at p. 86; Boland Aff. at ¶ 4). West American has provided a defense to B&K Grocery under a full reservation of rights. (Matheny Aff.).

## STANDARD OF REVIEW

Summary judgment is to be granted only if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of

---

[6]Boland's affidavit is located at document 24, exhibit A in this court's record of the case.

[7]Hargrave's second amended complaint (hereinafter "Complaint") is located at document 22 in the court's record of the case.

3

material fact that should be decided by trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof.  *Celotex,* 477 U.S. at 322-23, 106 S. Ct. 2548; *see* Fed. R. Civ. P 56(a) and (b).  Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548.  The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings.  *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[T]he judges's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S. Ct. 2505.

**DISCUSSION**

Because this court's jurisdiction in this case is based on diversity of citizenship, the substantive law of Alabama applies to this action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Therefore, this court is "bound to decide the case the way it appears the state's highest court would." *Towne Realty, Inc. v. Safeco Ins. Co.*, 854 F.2d 1264, 1269 n.5 (11th Cir. 1988).

As stated by the court in *Shalimar Contractors, Inc. v. American States Ins. Co.*, 975 F. Supp. 1450, 1454 (M.D. Ala. 1997), *aff'd without opinion*, 158 F.3d 588 (11th Cir. 1998):

> 'An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured.' *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993); *Ladner & Co. Inc. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977). Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the insurance policy, *Colonial Life & Accident Ins. Co. v. Collins*, 280 Ala. 373, 194 So. 2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusions. *Universal Underwriters Ins. Co. v. Stokes Chevrolet*, 990 F.2d 598, 605 (11th Cir. 1993) (citing *United States Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)); *see also Jordan v. National Accident Ins. Underwriters, Inc.*, 922 F.2d 732, 735 (11th Cir. 1991).
>
> According to the Alabama Supreme Court, "insurance companies have the right to limit the coverage offered through the use of exclusions in their policies, provided that those exclusions do not violate a statute or public policy." *Hooper v. Allstate Insurance Company*, 571 So. 2d 1001, 1003 (Ala. 1990); *see also Ex Parte O'Hare*, 432 So. 2d 1300 (Ala. 1983); *Bell v. Travelers Indem. Co. of America*, 355 So. 2d 335 (Ala. 1978). An insurance contract, like other contracts, is "construed to give effect to the intention of the parties thereto, and when the intention is clear and unambiguous, the policy must be enforced as written." *State Farm Mutual Automobile Ins. Company v. Lewis*, 514 So. 2d 863, 865 (Ala. 1987). In determining the intent of the parties, the court must read each phrase in the context of all other provisions and must not view the terms in isolation. *See Hall v. American Indemnity Group*, 648 So. 2d 556, 559 (Ala. 1994). However, it is also well established that such exclusions "are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured," and, moreover, "such clauses must be construed most strongly against the company that issued

the policy." *Id.* (citing *Georgia Cas. & Sur. Co. v. Universal Underwriters Ins. Co.*, 534 F.2d 1108 (5th Cir. 1976) and *American Liberty Ins. Co. v. Soules*, 288 Ala. 163, 258 So. 2d 872 (1972)). Furthermore, "if ambiguity exists in the language of the exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording." *Associated Scrap Metal, Inc. v. Royal Globe Ins. Co.*, 927 F. Supp. 432, 437 (S.D. Ala. 1995) (citing *Guaranty Nat'l Ins. Co. v. Marshall County Bd. of Ed.*, 540 So. 2d 745 (Ala. 1989)).

### a. Pollution Exclusion

In the instant case, both West American and EMCC seek a declaratory judgment finding that the plaintiff's claims in the underlying suit are excluded from the insurance coverage they provided to B&K by the pollution exclusions contained within the pertinent policies.[8] As noted

---

[8] The West American policies contain the following language:

> B. Exclusion
>
> This insurance does not apply to any of the following:
>
> . . .
>
> 8. POLLUTION EXCLUSION APPLICABLE TO "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS"
> "Bodily injury," "property damage" or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>   a. At or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any "insured";
>   b. At or from any premises, site or location that is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;
>   c. At or from any premises, site, location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations:
>     (1) To test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the "pollutants"; or
>     (2) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor, or subcontractor; or
>   d. That are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom you may be legally responsible.

The policy further defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Matheny Aff. at Exs. 1 & 2, p. 5 of 15).

Likewise, the EMCC policy provides:

B. Exclusions
1. Applicable to Business Liability Coverage

This insurance does not apply to:

a. Expected or Intended Injury

. . .

f. Pollution

    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

        (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

        (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

        (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any inured or any person or organization for whom you may be legally responsible; or

    . . .

    (2) Any loss, cost or expense arising out of any:

        (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Doc. 24 at Exhibit 1). EMCC's policy further excludes coverage for "personal injury" or "advertising injury" at B(p):

    (5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

    (6) With respect to any loss, cost or expense arising out of any:

        (a) Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        (B) claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the

previously, neither B&K nor Hargrave have filed anything with the court arguing to the contrary, and thus, have not created any ambiguity in the plan language.

Gasoline and hydrocarbon constituents constitute contaminants when released into the soil or when they migrate into groundwater used as drinking water. *See Tenneco, Inc. v. Alabama Department of Environmental Management,* 1992 WL 124952 (ADEM, April 22, 1992) (referring to the "contamination of soils and groundwater from leaking underground storage tanks").[9] Courts faced with similar facts and exclusion policies have upheld the exclusion clause. *See e.g., Shalimar Contractors, Inc. v. American States Ins. Co.*, 975 F. Supp. 1450 (M.D. Ala. 1997) (finding claims regarding lead-bearing waste and temporarily deposited lead contaminated work clothes near the plaintiff's apartment within the pollution exclusion clause of the general liability policy); *Harrison v. R.R. Morrison & Sons, Inc.*, 862 So. 2d 1065, 1072 (La. App. 2003) (holding insurer had no duty to defend insured convenience store owner against claim by neighboring land owner arising out of suit alleging property damage caused by gasoline leak from underground storage tank because gasoline was "pollutant" within meaning of pollution exclusion in insured's liability policy); *Truitt Oil & Gas Co., Inc. v. Ranger Ins.* Co., 498 S.E. 2d 572 (Ga. Ct. App. 1998) (finding gasoline that leaked from insured's underground storage tanks and contaminated surrounding environment was "pollutant" within meaning of

---

> effects of pollutants.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(*Id.*).

[9]Both parties have also submitted the affidavit of Dr. Marvin McKinley, a chemical engineer with extensive experience in the field, in which he asserts that "gasoline is a pollutant and a contaminant, especially when it leaks from or otherwise escapes its container or storage vessel and seeps into soil, groundwater, drinking water or otherwise into the environment." Dr. McKinley's complete affidavit, including his curriculum vitae, is located at document 21, exhibit B and document 24, exhibit B in this court's record of the case.

pollution exclusion in insured's liability policy); *Stull v. American States Inc. Co.*, 963 F. Supp. 492 (D. Md. 1997) (finding gasoline was a "pollutant" and that coverage was barred by absolute pollution exclusion for claims involving contamination of well water by underground gasoline contamination on adjoining property); *Union Mutual Fire Ins. Co. v. Hatch*, 835 F. Supp. 59 (D. N.H. 1993) (finding that gasoline was a "pollutant" within meaning of business insurance policy's pollution exclusion clause and policy excluded coverage for action by insured's neighbor for claims of negligence, strict liability, and nuisance arising out of alleged migration of gasoline from insured's property to neighbor's property).

In the underlying suit, Hargrave alleges that "gasoline releases" from the tanks on B&K's property "have and continue to contaminate and pollute soil and groundwater on [her] property." (Complaint at ¶ 51). Hargrave further asserts that this contamination and pollution caused the bodily injury and property damage she is claiming. (Complaint at ¶¶ 30-31, 40-42, 44-45, 49, 51-52, 59-60, 69-72, 75, and 81-82).

In the absence of any evidence to the contrary, the court finds that the claims alleged in the plaintiff's complaint are barred as against West American and EMCC by the pollution exclusion provisions in the relevant policies.

### b. Intentional, Willful and Wanton Acts[10] & Expected or Intended Injury

The West American policy also includes a clause that states:

> We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from garage operation other than ownership, maintenance or use of covered autos.

---

[10]The EMCC policy requires that bodily injury be caused by an "occurrence." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 24 at Ex. 1).

9

(Doc. 21, Exs. 1 & 2 at p. 3 of 15). However, the policy excludes coverage for bodily injury or property damage "expected or intended from the standpoint of the 'insured.'" (Doc. 21, Exs. 1&2 at p. 4 of 15). Similarly, the EMCC policy contains a clause that the insurance does not apply to "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." (Doc. 24 at Ex. 1). Under Alabama law, the exclusion for injury or damage that is expected or intended applies to intentional torts as well as claims for wantonness. *See Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 573 (Ala. 1988); *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349 (M.D. Ala. 1997).

The plaintiff's complaint alleges intentional, willful, and wanton acts. (Complaint at ¶¶ 49, 65-66, 68, 71 & 80). West American and EMCC assert that there was no accident or "occurrence" and that if there were, the plaintiff's claims are subject to the intended or expected damage and injury exclusion. As such, they are not covered by the pertinent policies. In the absence of any evidence to the contrary, the court agrees.

  **c. Breach of Notice Condition**

Both the West American policies and the EMCC policy contain standard provisions requiring B&K to notify the insurer as soon as practicable of an occurrence or any accident or loss. (Doc. 21, Exs. 1 & 2 at p. 11 of 15 and p. 12 of 15; Doc. 24 at Ex. 1). The evidence is undisputed that B&K first became aware of an environmental problem on its premises when Qualls Engineering Services began drilling on its premises to test the groundwater in 2001. (Murphy Statement at pp. 43-49, 68). In February 2003, B&K received confirmation that gasoline has, in fact, leaked into the soil and the groundwater. (Murphy Statement at pp. 41-42,

10

50-51). As early as August 2003, Murphy was worried about liability for environmental claims by surrounding landowners. (Murphy Statement at p. 67). In the Fall of 2003, Murphy received confirmation from the Alabama Department of Environmental Management ("ADEM") that Hargrave's water well was contaminated and he discussed with ADEM the possibility of coverage under the Alabama Underground and Aboveground Storage Tank Trust Fund. (Murphy Statement at pp. 51-55, 65, 68, 74-75).

The undisputed evidence shows that Murphy made no effort to notify either West American or EMCC of the problems until March 2004, after the underlying suit. (Murphy Statement at p. 86). As excuse for his failure to notify either West American or EMCC, Murphy alleges that (1) he was unaware of the policies' requirement to provide notice and (2) he assumed that Hicks Oil Company was legally responsible. (Murphy Statement at pp. 86-89). Both of Murphy's excuses for failure to give notice to the insurers are legally insufficient.

The evidence shows that B&K received copies of each of the relevant insurance policies. As such, ignorance of the policy terms is not an excuse. *Southern Guaranty Ins. Co. v. Thomas*, 334 So. 2d 879, 883-84 (Ala. 1976).

Likewise, Murphy's second proffered excuse fails because he did not have an objectively reasonable belief that B&K was free from liability. *Id*. (Finding a six month delay in notice a breach of the notice condition and reversing jury verdict for insured on late notice issue). To the contrary, the evidence shows that in August 2003, Murphy made contact with ADEM officials about possible coverage for B&K under the ADEM Trust Fund. (Murphy Statement at pp. 51-55, 65, 68, 74-75). However, B&K did not notify West American or EMCC of the claims until seven months later. The court, therefore, finds that Murphy and B&K breached the notice

provisions in the relevant policies by failing to provide notice to either West American or EMCC in a timely fashion.

## CONCLUSION

For the reasons set out herein, the plain language of the relevant policies of insurance exclude coverage for the types of claims asserted by Hargrave against B&K. Therefore, the court finds that neither West American nor EMCC have any duties or obligations to defend or to pay any judgment that may be rendered in the underlying lawsuit based on the claims presented before this court. As such, the plaintiffs' motions for summary judgment (docs. 21 & 24) are due to be granted. An appropriate judgment will be entered.

**DONE**, this 28th day of April, 2005.

*/s/ John E. Ott*
**JOHN E. OTT**
United States Magistrate Judge